**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| ALLIN FRAWLEY, on behalf of himself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 1:23-CV-10384-AK |
| NEXSTAR MEDIA GROUP, INC. | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

**A. KELLEY, D.J.**

Plaintiff Allin Frawley ("Frawley" or "Plaintiff"), on behalf of himself and all others

similarly situated, brings this suit against Defendant Nexstar Media Group, Inc. ("Nexstar" or

"Defendant") for violating the Video Protection Privacy Act ("VPPA") through its sharing of

personal information obtained while Frawley was using the website *The Hill*, which is owned by

Nexstar.  Frawley claims that Nexstar knowingly disclosed data containing its digital

subscribers' personally identifiable information, which featured files showing which videos and

URL's those subscribers accessed, to Meta Platforms, Inc. ("Facebook").

Nexstar has moved to dismiss Plaintiff's Complaint because of a lack of personal

jurisdiction and because Plaintiff's claims are not protected under the VPPA.  [Dkt. 13].

Alternatively, Nexstar seeks to have this case transferred to a different jurisdiction; either to

Texas because of the forum selection clause Frawley agreed to in the Terms of Service or to

1

United States District Court for the Central District of Illinois where a "nearly identical action alleging a putative class" was filed prior to this case. [Id. at 9].

Because the Court has determined that it does not have personal jurisdiction over the Defendant in this matter, Defendant's motion to dismiss is **GRANTED** and Plaintiff's complaint is **DISMISSED**. The Court will therefore not address the parties arguments regarding the request to transfer or the merits of the claims.

## I.      BACKGROUND

The following facts, unless otherwise indicated, are derived from Plaintiff's initial complaint. [Dkt. 1 ("Compl.")]. Plaintiff Allin Frawley is a citizen of Massachusetts and is domiciled there. [Compl. at ¶ 12]. Defendant Nexstar is headquartered in Texas and is the largest television station owner in the United States. [Id. at ¶ 13]. Nexstar is incorporated in Delaware. [Dkt. 11 at ¶ 3]. Defendant acquired *The Hill*, a digital news company, in August 2021. [Compl. at ¶ 13]. *The Hill* is based in Washington D.C. and is the largest independent political news site in the U.S. [Id.]. Its website includes *TheHill.tv* which features a variety of videos which are made available to its digital subscribers. [Id.]. *The Hill* provides "in-depth coverage of Congress, the Presidential Administration, business and lobbying, campaigns, and more." [Dkt. 12 at ¶ 3]. *The Hill*'s provider, Capitol Hill Publishing Corporation, has offices in Washington D.C. and in New York. [Id. at ¶ 4]. Around 2% of visitors to TheHill.com are located in Massachusetts. [Id. at ¶ 11].

Nexstar's business activities in Massachusetts include the operation of a television broadcast station in Springfield, Massachusetts and the ownership of real estate related to that television station. [Dkt. 11 at ¶ 7]. A TV station Nexstar owns in Providence, Rhode Island also broadcasts into parts of Massachusetts. [Id.]. The company employs around 136 of its 12,000

employees in Massachusetts and it earns around 1.0% of its revenue from Massachusetts.  [Id. at

¶¶ 8-9].  None of the Springfield or Providence employees and none of the real estate owned by

Nexstar in Massachusetts, are related in any way to the operations of *The Hill*.  [Id. at ¶¶ 7-8].

*The Hill* does not own any real estate, employ any staff, or have any office in Massachusetts.

[Id.].  *The Hill* is not registered to do business in Massachusetts and has never paid taxes in

Massachusetts.  [Id.].

Plaintiff filed a class action complaint against Nexstar, as the owner of *The Hill*, for

violating the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA").  [Compl. at 2].  Under

the VPPA, "video tape service providers," are prohibited from knowingly disclosing the

personally identifiable information ("PII") of consumers, including "information which identifies

a person as having requested or obtained specific video materials or services from a video tape

provider," without obtaining their express consent from a stand-alone consent form.  [Id. at ¶ 2].

Plaintiff claims Defendant knowingly disclosed its readers PII, without their consent, to Meta

("Facebook") by collecting and sharing the personal information of users who visited its app or

website with third parties via cookies, pixels, and Conversions API.  [Id. at ¶¶ 1, 3].  Frawley

asserts that Nexstar installed a code called the "Facebook pixel" on *The Hill*'s website which

tracks the videos viewed by its digital subscribers and discloses them to Facebook—even when

the subscriber has not consented to having that information shared.  [Id. at ¶ 4].  This PVI data is

shared with Facebook in a manner that allows Facebook, or anyone else, to know which videos

subscribers watched on *The Hill*'s website.  [Id. at ¶ 5].  According to Frawley, Nexstar profits

from this undisclosed information exchange.  [Id. at ¶ 6].

Frawley began his digital subscription to *The Hill* in 2019 and is still a subscriber today.

[Id. at ¶ 12].  Frawley discovered that the Defendant disclosed his Personal Viewing Information

("PVI") to Facebook without his consent in November of 2022.  [Id. at ¶¶ 78, 79].  In addition to

subscribing to *The Hill*, the Plaintiff also has a Facebook account and has used his subscription

for *The Hill* while logged in on his Facebook account.  [Id. at ¶ 12].  Due to this, Plaintiff's PVI

was disclosed to Facebook even though he never gave his express written consent to disclose it.

[Id. at ¶ 12].  Frawley asserts that Nexstar has been "systematically" disclosing his and other

class members' PVI to Facebook without providing notice or obtaining consent.  [Id. at ¶ 19].

        To register for *The Hill*, users must sign up for an online newsletter and they provide

their personal information when doing so.  [Id. at ¶ 20].  There is no cost associated with signing

up for the newsletter and visitors are not required to register to TheHill.com to view content on

the website.  [Dkt. 12 at ¶ 12].  *The Hill* estimates that around 2.4% of its newsletter recipients

are in Massachusetts.  [Id. at ¶ 15].  It does not engage in marketing for its newsletter, or its print

and digital versions, in Massachusetts except by passively promoting it on its website.

[Id. at ¶ 16].

        Frawley asserts that unbeknownst to many, as part of the newsletter registration process,

users are also providing their IP addresses which contain their city, zip code, and physical

location, as well as their cookies.  [Compl. at ¶¶ 22, 23].  He adds that Defendant does not

disclose to its subscribers that it will share their PVI with third parties, and subscribers are not

asked to consent to this information being shared as part of signing up.  [Id. at ¶ 24].  When a

digital subscriber watches *The Hill* video media, they are not provided any notification that their

information is being shared, nor are they given an opportunity to provide their written consent

for doing so "in a form distinct and separate from any form setting forth other legal or financial

obligations of the consumer" which the VPPA requires.  [Id. at ¶ 26].  *The Hill*'s privacy policy

does disclose that it collects "personal information" such as names, phone numbers, and

addresses, and that it automatically collects "information about [user] interactions with video content, such as the type of content viewed." [Id. at ¶¶ 27-28]. The data *The Hill* sends to Facebook also contained unique identifiers which could enable a digital subscriber's viewing information to be linked and attributed to their Facebook ID ("FID"), allowing the subscriber's viewing information to be attributed to the subscriber personally. [Id. at ¶ 58]. Facebook can easily identify any individual on its platform using their FID and so can any ordinary person that comes into possession of it. [Id. at ¶ 54]. Frawley contends that Nexstar decision to voluntarily install Facebook's business tools, including the Pixel, led to its users' private information being disclosed to Facebook. [Id. at ¶ 39]. He also asserts that tracking this information is not necessary for Defendant to operate *The Hill*'s digital news publications. [Id. at ¶ 72].

Frawley filed this Complaint on February 20, 2023, seeking damages and injunctive relief for Defendant's violation of the VPPA. [Compl.]. He seeks the following relief: (1) a determination that this action may be maintained as a class action; (2) an order declaring that Defendant's conduct violates the VPPA; (3) compensatory damages of $2,500.00 to Plaintiff and each Class member, (4) punitive damages, to be determined at trial; (5) prejudgment interest on all amounts awarded; (6) an order of restitution and all other forms of equitable monetary relief; (7) injunctive relief; and lastly (8) reasonable attorney's fees and expenses, and cost of suit. [Id. at ¶¶ 99(a-h)]. On April 24, 2023, Nexstar filed its motion to dismiss Frawley's Complaint seeking to dismiss it in its entirety, to have it transferred to the Central District of Illinois where a similar earlier filed matter is pending, or alternatively, to have it stayed pending the resolution of the first-filed Illinois action. [Dkt. 8].

## II.   LEGAL STANDARD

A Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction challenges the ability of the court to assert judicial power over the defendant.  When personal jurisdiction is contested, the plaintiff has the "ultimate burden of showing by a preponderance of the evidence that jurisdiction exists." Vapotherm, Inc. v. Santiago, 38 F.4th 252, 257 (1st Cir. 2022), (quoting Adams v. Adams, 601 F.3d 1, 4 (1st Cir. 2010)).   To demonstrate this, the plaintiff should "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction."  Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016).  The court shall review the pleadings, supplemental filings in the record, undisputed facts provided by the defendant, and then give credence to plaintiff's version of genuinely contested facts.  Id.  The burden of proof is "light" but nevertheless requires plaintiff to rely not on "mere allegations" alone but to point to specific facts in the record that support their claims.  Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 8 (1st Cir. 2002) (citing Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002).

## III.   DISCUSSION

Here, the Court is unable to establish specific personal jurisdiction over Nexstar given that its contacts are not sufficient to enable coverage under Massachusetts' long-arm statute, because *The Hill*'s website's general availability is inadequate to demonstrate purposeful availment, and because Nexstar's Massachusetts contacts are not related to this controversy.[1]

---

[1] The Court is also unable to exercise general jurisdiction.  When a defendant corporation's general business contacts with the forum state, even if unrelated to the litigation at hand, are "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State," that state wields general jurisdiction over the defendant regarding all claims.  Copia, 812 F.3d at 4 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011)).  Nexstar's business transactions in Massachusetts are not so extensive as to render them "essentially at home in the forum State.'"  Kuan Chen v. United States Sports Acad., Inc., 956 F.3d 45, 55 (1st Cir. 2020).  A corporation is considered "at home" in "its state of incorporation and the state that houses its principal place of business."  See BNSF Ry. Co. v. Tyrrell, 581 U.S. 402 (2017).  Nexstar is an American corporation

6

The "burden of establishing that jurisdiction over the defendant lies in the forum state" belongs to the plaintiff, and Frawley has not met that burden. Baskin-Robbins, 825 F.3d at 34.

When federal jurisdiction, as here, is based on the presence of a federal question, the court can exercise personal jurisdiction if there is either a federal statute permitting nationwide personal jurisdiction through service of process or if jurisdiction is proper under the state's long-arm statute. Motus, LLC v. CarData Consultants, Inc., 23 F.4th 115, 121-22 (1st Cir. 2022). Here since the federal statute in question does not authorize nationwide personal jurisdiction, the Plaintiff must satisfy Massachusetts' long-arm statute. To meet the requirements under the long-arm statute, the court's jurisdiction must also comport with the requirements of due process. Id. at 122. While the First Circuit has sometimes treated Massachusetts' long-arm statute as coextensive with the requirements of due process, the long-arm statute can impose more restrictive limits. Copia Commun., LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016).

### A. Long-arm statute

Plaintiff first argues that Defendant's conduct is covered by Mass. Gen. Laws ch. 223A, § 3(a) ("Section 3(a)") of the long-arm statute. [Dkt. 21 at 27]. Section 3A permits a court to "exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action in law or equity arising from the person's … transacting any business in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(a). In order to demonstrate the transacting business requirement under Section 3(a), the plaintiff must demonstrate the following: (1) that the defendant transacted business in Massachusetts, and (2) that plaintiff's claim arose from the transaction of business by defendant. Tatro v. Manor Care, Inc., 625 N.E.2d 549, 551 (Mass.

---

headquartered in Texas and its subsidiary, *The Hill*, is based in Washington, D.C. [Compl. at ¶ 13]. Neither can fairly be said to be "essentially at home" in Massachusetts. Kuan Chen, 956 F.3d at 55.

1994). "Transacting any business" is understood broadly and the Court must look to whether Defendant "attempted to participate in the commonwealth's economic life." Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015) (quoting United Elec., Radio & Mach. Workers of Am. 960 F.2d at 1087).

However, "isolated transactions unaccompanied by 'purposeful intent' on the part of [a] defendant[ ] and having only a 'slight effect on the commerce of the Commonwealth' are not enough to support jurisdiction" under Section 3(a). Sun Life Assurance Co. of Canada v. Sun Bancorp, Inc., 946 F. Supp. 2d 182, 188 (D. Mass. 2012) (quoting Intech, Inc. v. Triple "C" Marine Salvage, Inc., 826 N.E.2d 194, 198 (2005)) (additional quotations and citation omitted). Eventually, the question becomes a "but for" causation test which asks "[d]id the defendant's contacts with the Commonwealth constitute 'the first step in a train of events that result[ed] in the personal injury.'" Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 114 (1st Cir. 1997) (quoting Tatro, 625 N.E.2d at 553). The standard is not rigorous. Baskin–Robbins, 825 F.3d at 34 n.3.

Section 3(a) does not apply here to Nexstar's actions because Nexstar's contacts in Massachusetts are not related to the controversy here and they played no role in the "train of events" that resulted in the alleged injury. See Lyle Richards Int'l, 132 F.3d at 114. Frawley argues that Nexstar's website *The Hill* solicits consumers in Massachusetts to sign up for its digital and print newspaper and that the injury he suffered occurred in the Commonwealth. [Dkt. 21 at 28-29]. This however is not sufficient to demonstrate that *The Hill* transacted business in Massachusetts. *The Hill's* free newsletter cannot be said to have more than a "slight effect on the commerce of the Commonwealth" since it is merely operating a website that provides free content. Sun Life Assurance Co. of Can. 946 F. Supp. 2d at 188 (quoting Intech, Inc., 826

N.E.2d at 198).  Frawley does not make any assertion that Nexstar actively solicited

Massachusetts citizens more than citizens of any other state.  He does not assert that they

actively solicited Massachusetts residents to sign up for the newsletter at issue here.  Nor are

there any allegations that *The Hill* has any agents in the Commonwealth or agreements to do

business therein.  The defendant's only relevant presence in Massachusetts here is the

availability of the website TheHill.com, which is insufficient, without more, to constitute

"transacting business."  Chase v. Gist, CIV.A. 12-40020-FDS, 2012 WL 1581682 at *3 (D.

Mass. May 3, 2012) (finding online university had not transacted business in the Commonwealth

despite the availability of its website because of its minimal economic impact and the lack of

advertising to or targeting of Massachusetts residents).

Plaintiff also argues that jurisdiction is authorized under Mass. Gen. Laws ch. 223A, §

3(d) ("Section 3(d)").  [Dkt. 21 at 29].  However, the Court can only rely on Section 3(d) when it

has general jurisdiction over the defendants.  Connecticut Nat. Bank v. Hoover Treated Wood

Products, Inc., 638 N.E.2d 942, 944 n. 6 (Mass. App. 1994) ("[Section 3(d)] is predicated on

general jurisdiction"); Pettengill v. Curtis, 584 F. Supp. 2d 348, 357 (D. Mass. 2008) (stating that

Section 3(d) would "only apply if general jurisdiction existed over the Individual Defendants").

Since, neither Nexstar nor *The Hill* can be fairly said to be "at home" in Massachusetts, the Court

does not have general jurisdiction over the Defendant.  See n.1; Chen, 956 F.3d at 55.

Accordingly, the Court's jurisdiction is not authorized under the Commonwealth's

long-arm statute.

**B. Due process**

Even if the Court's jurisdiction were authorized by the long-arm statute, it cannot

exercise specific jurisdiction here because doing so would violate the Due Process clause.  This

is because Defendant's contacts in the Commonwealth are insufficient to demonstrate purposeful

availment and the contacts that do exist are unrelated to Plaintiff's injury.  In making this

determination, the court must examine whether the defendant has sufficient "minimum contacts

… such that the maintenance of the suit does not offend 'traditional notions of fair play and

substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken

v. Meyer, 311 U.S. 457, 463 (1940)).  To establish this, the Plaintiff must demonstrate that:

> (1) [his] claim directly arises out of or relates to the defendant's
> forum-state activities; (2) the defendant's contacts with the forum
> state represent a purposeful availment of the privilege of
> conducting activities in that state, thus invoking the benefits and
> protections of that state's laws and rendering the defendant's
> involuntary presence in that state's courts foreseeable; and (3) the
> exercise of jurisdiction is ultimately reasonable.

Vapotherm Inc., 38 F.4th at 258 (quoting Scottsdale Cap. Advisors Corp. v. The Deal, LLC, 887

F.3d 17, 20 (1st Cir. 2018)).  Each of these three elements must be demonstrated in order for the

Court to exercise specific personal jurisdiction.  Scottsdale Cap., 887 F.3d at 20.  When, as here,

the contacts in question are related to a website that is available in the forum but that is operated

outside of it, the Court's focus should begin with the purposeful availment prong.  Sun Life

Assur., 946 F. Supp. 2d at 190.

To demonstrate purposeful availment, the court looks to the "two key focal points" of

voluntariness and foreseeability.  Vapotherm Inc., 38 F.4th at 261.  This means that the contacts

must be voluntary rather than the result of unilateral actions of another party and they must also

be sufficient to give the defendant notice "such that [it] could 'reasonably anticipate being haled

into court'" involuntarily in the Commonwealth.  Id. at 262 (quoting World–Wide Volkswagen

Corp. v. Woodson, 444 U.S. 286, 297 (1980).  This requirement protects defendants from being

subjected to personal jurisdiction based on "random, fortuitous, or attenuated contacts."

Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 32 (1st Cir. 2010) (quoting Burger King Corp. v.

Rudzewicz, 471 U.S. 462, 475 (1985)).

The fundamental hurdle that Plaintiff is unable to overcome here is that the contacts

which result from a website like TheHill.com being generally available online are not sufficient

to demonstrate purposeful availment.  Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 8 (1st

Cir. 2018) (describing "baseline principle" that "a website operator does not necessarily

purposefully avail itself of the benefits and protections of every state in which its website is

accessible.")  The First Circuit has been clear that the existence of a website that is accessible in

the forum is not sufficient without "something more;" otherwise "[g]iven the 'omnipresence' of

internet websites, such a rule would 'eviscerate' the limits on personal jurisdiction over out-of-

state defendants."  Cossaboon, 600 F.3d at 35 (quoting McBee v. Delica Co., 417 F.3d 107, 124

(1st Cir. 2005)).  In Cossaboon the First Circuit found there was no purposeful availment within

New Hampshire from Maine Medical Center's ("MMC")'s website that advertised the health

care facility's services.  Id.  While MMC's site was interactive in nature and advertised its

services to users in a manner that may have increased their chances of using MMC as a

healthcare provider, this was equally true for residents of New Hampshire as it was for residents

of any other state.  Id. at 35–36.  The fact that the website mentioned in a handful of instances

that it served patients from New Hampshire did not change that fact.  Id. at 36 n.4.  Similarly, in

Chen an Alabama corporation's online learning platform did not demonstrate purposeful

availment even though it was available everywhere.  956 F.3d at 60.  The First Circuit in Chen

noted that while the defendant's website shared an interactive learning platform with a student in

Massachusetts, there was no indication that this website sought to recruit students from

11

Massachusetts in particular or that the defendant earned significant revenue from the Commonwealth.  Id.

Here, Plaintiff in his Complaint does not argue that *The Hill* has taken any action to target Massachusetts residents, to advertise in the Commonwealth, or to solicit readership in Massachusetts in particular.  See Cossaboon, 600 F.3d at 35.  Plaintiff in his reply brief points to the fact that *The Hill* seeks to sell digital and print subscriptions to Massachusetts residents, that it operates a job search platform that connects people with jobs throughout Massachusetts, and that it produces news content about and for Massachusetts residents.  [Dkt. 21 at 22].  The same could be said though about *The Hill*'s interactions with every other state.  Nothing in the Complaint describes efforts to target Massachusetts or significant revenue *The Hill* raises from its Massachusetts contacts.  See Chen, 956 F.3d at 60; [Compl.].

Plaintiff points to news articles written about Massachusetts in *The Hill* as evidence of "something more."  [Dkt. 21 at 31]; Cossaboon, 600 F.3d at 35.  Even if the Court were to take judicial notice of those articles, which are produced from *The Hill*'s general search engine, nothing indicates that its reporting on Massachusetts is distinguishable from its reporting on any other state.  A news outlet's coverage may touch on issues in different states, but without evidence manifesting an intent to target and focus on readers in that jurisdiction, coverage of a news event in another state is not enough to demonstrate purposeful availment.  Young v. New Haven Advoc., 315 F.3d 256, 263 (4th Cir. 2002) (finding no purposeful availment in Virginia from Connecticut newspapers for their coverage of a prisoner transfer to Virginia because the "general thrust and content" of the newspapers was "decidedly local, and neither newspaper's website contains advertisements aimed at a Virginia audience").

Nexstar's contacts in the Commonwealth, through its TV stations and the revenue it extracts from them, are more extensive.  Any inquiry into Nexstar's contacts, outside of its ownership and management of *The Hill*, is futile though.  This is because none of those contacts are related to the conduct Plaintiff challenges here.  In order to meet the relatedness requirement, there must be a "causal nexus between the defendant's contacts and the plaintiff's cause of action." Vapotherm, Inc., 38 F.4th at 260 (quoting Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999)).  There are no factual allegations tying Nexstar's other contacts in Massachusetts to *The Hill* and the alleged violation of the VPPA.  Nor are there any contacts that can be traced to *The Hill*, aside from its operation of a website that can be found from anywhere online, that are in the Commonwealth and that played a role in creating plaintiff's cause of action.

Frawley is therefore unable to demonstrate that the prongs of purposeful availment and relatedness have been met.  The Court then need not address whether the exercise of jurisdiction over Nexstar here would be fair and reasonable.  Vapotherm, Inc., 38 F.4th at 263. Accordingly, the Court cannot assert personal jurisdiction over Nexstar in this instance.

## IV.    CONCLUSION

For the foregoing reasons, Nexstar's Motion to Dismiss the Complaint is **GRANTED**. Frawley's Complaint is therefore **DISMISSED.**

**SO ORDERED.**

Dated: September 18, 2023                                  /s/ Angel Kelley
                                                          Hon. Angel Kelley
                                                          United States District Judge